IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF KANSAS

IN RE:                                    )
                                          )
GARY E. KRAUSE,                           )        Case No. 08-1132
                                          )
                      Debtor.             )
_____)
                                          )
UNITED STATES OF AMERICA,                 )        Case No. 08-1136
                                          )
                      Plaintiff,          )
                                          )
and                                       )
                                          )
LINDA S. PARKS, Trustee,                  )
                                          )
                      Intervenor,         )
                                          )
        v.                                )
                                          )
GARY KRAUSE and                           )
 RICHARD KRAUSE,                          )
                                          )
                      Defendants,         )
                                          )
and                                       )
                                          )
DRAKE KRAUSE and RICK KRAUSE,             )
                                          )
                      Intervenor.         )
_____)

MEMORANDUM AND ORDER

        This matter is before the court on appeal from Chief Bankruptcy Judge Nugent's

Sanction Order (Doc. 311) and Bankruptcy Order (Doc. 533). [1]

_____

        [1]Unless otherwise noted, reference to docket entries will be from the Bankruptcy Court
case number 05-5775.

1

I.  Facts

1.  Gary Krause filed for Chapter 7 bankruptcy on October 10, 2005.  (05-17429, Doc. 1).

2.  The United States filed an adversary proceeding pursuant to Bankruptcy Rule 7001 on November 1, 2005.  (Doc. 1).

3.  Richard Krause, the trustee of the debtor's trusts, filed an application for payment of attorney fees from the Krause trusts.  The bankruptcy court denied the application.  (Doc. 128).

4.  The Government filed a motion to compel discovery and for sanctions against the debtor on August 24, 2006.  (Doc. 130).

5.  The bankruptcy court granted the Government's motion to compel discovery, including electronic documents.  The court did not impose sanctions.  (Doc. 139).

6.  On October 11, 2006, the attorney for Richard Krause, trustee for the Krause trusts, was allowed to withdraw.  (Doc. 165).  Richard Krause was not involved in the case after his attorney withdrew.

7.  On October 13, 2006, the Trustee filed a Motion to Compel Turnover of Computer from the Debtor.  (Doc. 158).  The parties submitted to the court an Agreed Order, in which the debtor represented that he owned two computers, and he would deliver the computers to the Trustee.  The Trustee would then copy the hard drives, and return the computers to the debtor.  (Doc. 177).  The court signed the Agreed order on January 16, 2007.  (Doc. 195).

8.  On January 10, 2007, Drake E. Krause, one of Gray Krause's sons, filed a Motion to Intervene.  The Motion states that Drake and Richard Krause, a minor brother,  are the beneficiaries of the trusts.  (Doc. 190).  The court allowed the sons of Gary Krause to intervene.  (Doc. 232).

9.  The Trustee filed a Motion for Sanctions for spoliation of electronic evidence.  (Doc. 219).

10.  The intervenors were allowed to respond to the Motion for Sanctions (Doc. 251), and were allowed to participate in the hearing.

11.  The court granted the Trustee's Motion for Sanctions, and granted in part the Government's motion for contempt.  (Doc. 314).

12.  The intervenors filed a motion to reconsider the court's order on sanctions and the court's order of judgment. (Doc. 331).   The motion was denied.  (Doc. 377).

13.  Intervenors filed a motion to dismiss certain claims brought by the plaintiff for lack of standing.  (Doc. 395).

14.  Intervenors filed a Motion for Partial Summary Judgment.  (Doc. 400).

15.  The United States filed a Motion for Summary Judgment.  (Doc. 405).

16. The debtor filed a Motion to Strike Certain Claims brought by the Plaintiff for Lack of Standing.  (Doc. 408).

17.  The debtor filed a Motion for Summary Judgment.  (Doc. 410).

18.  The Trustee filed a Motion for Summary Judgment.  (Doc. 415).

19.  The Trustee filed a Second Motion for Sanctions Relating to Debtor's Continued Spoliation of Evidence and Failure to Comply with the Court Orders.  (Doc. 416).

20.  The United States filed a Second Motion for Default Judgment to Hold Debtor in Contempt.  (Doc. 422).

21.  The Bankruptcy Court denied the intervenor's Motion to Dismiss Claims of the United States and the debtor's Motion to Strike Claims of the United States.  (Doc. 482).

22.  The court denied the debtor's Motion for Partial Summary Judgment.  (Doc. 493).

23.  The court denied the Motion for Summary Judgment filed by the United States and the Motion for Summary Judgment filed by the Trustee.  (Doc. 494).

24.  Debtor filed a Motion to Return Passport.  (Doc. 512).  The motion was denied. (Doc. 522).

25.  The court held a nine day trial on the merits of the case.  The court issued a Memorandum Opinion following the trial.  (Doc. 533).

26.  The debtor and the intervenors appeal the bankruptcy courts rulings.

II.  <u>Bankruptcy Court Rulings</u>

The Bankruptcy Court issued several rulings that are pertinent to the appeal.  On November 6, 2007, the Bankruptcy Court denied the debtor's Motion to Dismiss or Strike plaintiff United States of America's Fraudulent Conveyance Claims.  (Doc. 482).  The debtor argued the Government did not have standing to bring the fraudulent conveyance and nominee claims.  The court ruled that the Government raised the claims "as a predicate to a determination that the entities are nominees, not in an effort to avoid the transfers."   The court also ruled the claims were brought by the trustee, who is a proper party to raise the claims.  The debtor's motion to strike the fraudulent conveyance claims was denied.

On June 7, 2007, the bankruptcy court issued an order regarding sanctions against the debtor.  (Doc. 311).  The Trustee filed a motion asking the court to find the debtor despoiled electronic evidence and sanctions for the despoliation.  The court conducted an evidentiary hearing, and found that the debtor willfully and intentionally destroyed electronically stored evidence.  The court imposed sanctions, including partial default judgment entered against the

debtor, determining that the Gary E. Krause Trust (GEKT), the Krause Irrevocable Family Trust (KIT), FIMCO and Federal Gasohol Corporation are the nominees or the alter ego of the debtor, property of the estate, and therefore subject to the Trustee's administration and subject to turnover. The court issued orders regarding the debtor's production of discovery. The court found Gary Krause had violated the September 18, 2006 Order compelling production of electronic files and the October 17, 2006 Order compelling turnover of the computers. The court further found Gary Krause had violated the preliminary injunction order and the asset disclosure order of April 14, 2006, as well as his duty as a debtor in bankruptcy. The court imposed identical sanctions as imposed for discovery violations, and imposed an additional sanction of forfeiture of the debtor's passport.

On April 21, 2008, following trial, the court issued a 112 page opinion deciding the remaining facts and legal issues in the case. (Doc. 533). The court determined the Krause Children Trusts (KCT I, KCT II, KCT III, KCT IV, KCT V) were nominees of Gary Krause, therefore the liens of the IRS attach to the property of the trusts; the property held by the children's trust is subject to turnover to the Trustee; the Government tax liens attach to the debtor's interest in Quivira; and the interest that the debtor fraudulently transferred should be recovered and retained for the benefit of the estate pursuant to § 544(b) and §550. The court granted judgment in favor of the Government on its claims under 11 U.S.C. § 523(a)(1)(C). The court determined the debtor's tax debts attributable to tax years 1994 and 1995 were excepted from discharge as a fraudulent return, and the entirety of his tax debt is excepted from discharge as a willful evasion.

III.  Jurisdiction

The district court has jurisdiction pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 158.

IV.  Standard of Review

This court reviews the proceedings as if it were an appellate court.  Factual

determinations of the bankruptcy court are reviewed under the clearly erroneous standard.

Taylor v. I.R.S., 69 F.3d 411, 415 (10th Cir. 1995).  The bankruptcy court's construction of a

statute is reviewed de novo.  Id.  The bankruptcy court's conclusions of law are reviewed de

novo.  In re Mullet, 817 F.2d 677, 678 (10th Cir. 1987).  All other rulings of the bankruptcy

court are reviewed for an abuse of discretion.  In re Aspen Limousine Service, Inc. 198 B.R. 341,

344 (D. Colo. 1996).  Under the abuse of discretion standard, "a trial court's decision will not be

disturbed unless the appellate court has a definite and firm conviction that the lower court made

a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."

Moothart v. Bell, 21 F.3d 1499, 1504 (10th Cir. 1994).  The court is allowed to defer to the trial

court's judgment due to "its firsthand ability to view the witness or evidence and assess

credibility and probative value."  Id.  The bankruptcy court's findings regarding the credibility

of witnesses will be given great deference.  Anderson v. City of Bessemer City, N.C., 470 U.S.

564, 565, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985), Fed.R.Civ.P. 52(a).

Insofar as summary judgment rulings are concerned, the court views the evidence in the

light most favorable to the non-moving party, and the opposing party is given all reasonable

inferences from the evidence.  Ryder v. City of Topeka, 814 F.2d 1412, 1418 (10th Cir. 1987).

Judgement notwithstanding the verdict may only be granted where the evidence "points all one

way and is susceptible of no reasonable inferences that sustain the position of the party against

whom the motion is made." <u>Bertot v. School District No. 1</u>, 522 F.2d 1171, 1178 (10th Cir. 1975).

     V.  <u>Discussion</u>

     The intervenors raise three issues on appeal: (1) the Bankruptcy Court erred as a matter of law when the Court granted partial summary judgment on claims respecting PRH LLC and Drake Enterprises following the Court's imposition of discovery sanctions against Gary Krause; (2) the court erred as a matter of law in ruling that the Krause Children's Trusts were the nominees of Gary Krause; (3) the court erred as a matter of law in ruling that the Kansas Statute of Repose did not bar certain claims of fraud. The debtor raises eight claims on appeal: (1) the court should grant judgment to the debtor notwithstanding the verdict because the bankruptcy court abused its discretion; (2) the court erred as a matter of law in denying the debtor dischargibility of the tax debt; (3) the court erred as a matter of law in awarding discovery sanctions which required the debtor to forfeit his passport; (4) the court erred as a matter of law in awarding discovery sanctions against debtor; (5) the court erred as a matter of law on debtor's Motion for Summary Judgment regarding the interpretation of 26 U.S.C. § 6502(a) as the applicable statute of limitations for the government's fraudulent conveyance-based claims; (6) the court erred as a matter of law in denying debtors's Motion to Strike Certain Claims brought by the plaintiff United States of America; (7) the court erred as a matter of law in ruling that the various trusts and corporations are Gary Krause's nominees; (8) the court erred as a matter of law in ruling that the Kansas Statute of Repose did not bar certain claims of fraud. The court will address the claims together where possible.

A. Judgment Notwithstanding the Verdict

The debtor requests the court grant judgment to the debtor notwithstanding the verdict because the Bankruptcy Court abused its discretion. The debtor argues the Bankruptcy Court imposed a "beyond a reasonable doubt" burden on the debtor, and the court misstated numerous facts upon which it relied to make conclusions of law. The United Sates and the Trustee argue that the debtor fails to cite to any evidence that the Bankruptcy Court employed the incorrect standard, and fails to cite to any evidence in the record that shows clear error.

The debtor argues the Bankruptcy Court inaccurately describes the testimony and evidence regarding the transfer of Fed Gas to the Gary E. Krause Trust; the bankruptcy court failed to recognize that the sale of FIMCO's stock and the buying of FIMCO's stock was for the net book value, which was zero; and that the trustee exercised sole and complete control over all the disbursement of all the trusts, except for the KCT 1 Merrill Lynch account. The debtor cites to exhibits in the record regarding Polo Executive Rentals bank statements and bank statements for all the trusts to support his argument. However, these exhibits are limited, and do not fully address his arguments.

The Bankruptcy Court found that FIMCO provided financial and management services for Krause's other entities but did not own any assets. (Doc. 533, p. 13). On September 1, 1992, Krause transferred his 510 shares of FIMCO stock to C. Norris Taylor, the co founder of FIMCO, making Taylor the 100% owner. Taylor did not pay any consideration, and the Bankruptcy Court determined each share had a par value of $1. The Court also took note that the transfer was made within 40 days after the tax court disallowed Barton's (another one of debtor's companies) and the related partnerships' losses and accrued interest deductions, and

within two years after the IRS issued Krause notices of deficiency. While Taylor was the 100% owner of FIMCO, Krause retained signing authority on the bank account. When Taylor retired on February 5, 2001 Krause became president of FIMCO, and was the only authorized signatory on the bank account. On September 9, 2002, a year after he retired, Taylor transferred FIMCO to the Krause Irrevocable Trust for no consideration.

The debtor does not cite to case law or the record to support his argument, simply arguing that the Bankruptcy Court made erroneous conclusions of fact. The court will not disturb the Bankruptcy Courts findings without evidence to support the debtor's arguments. The debtor fails to recognize that the bankruptcy court was concerned with his control over FIMCO, and his business ventures associated with FIMCO, although he was not an owner of the company, and while one of the children's trusts owned the company. The debtor does not dispute the Bankruptcy Courts findings regarding the business ventures of FIMCO.

The Bankruptcy Court found Fed Gas, a business venture involved in an ethanol plant and in the operation of an oil tanker, paid management fees to FIMCO. The debtor was the sole owner until 1989, when it was transferred the Gary E. Krause Trust for no consideration. The debtor maintained control over the company, and this company was the primary source of the debtor's income. The debtor does not dispute the findings of the Court, only the emphasis the court places on the transfer of the company for no consideration. Again, the control the debtor maintained over the company is central to the Bankruptcy Court's findings, and the Court did not misstate the facts of the case.

The bankruptcy court found Richard Krause was the named trustee for all the children's trusts. (Doc. 533, p. 39). The trusts were created as inter vivos, irrevocable spendthrift trusts.

9

(Doc. 533, p. 40). The debtor was not allowed to use the trust property to meet legal obligations, or use the trust property unless adequate consideration was provided or interest paid. (Doc. 533, p. 40). The Bankruptcy Court found the debtor was the sole beneficiary of the Gary E. Krause Trust and the Krause Irrevocable Trust, and Richard Kruase was the trustee for both trusts. (Doc. 533, p. 41). Numerous funds were transferred from the Paine Webber Account and the Merrill Lynch Account into KCT 1, KCT II, and KCT III. (Doc. 533, p. 41-42). Life insurance policies were transferred into the trusts as well. (Doc. 533, p. 42). The debtor's father created the GEKT, but, the debtor was able to transfer property into the trusts, and manage the assets of the trust. (Doc. 533, p. 42-43). The KIT was a trust managed by the debtor, but Richard Krause was the trustee. (Doc. 533, p. 43-44). The Bankruptcy Court found the debtor maintained control over all the trust accounts, mostly through business entities or through his wife's accounts that were transferred into the trusts for little or no consideration. (Doc. 533, p. 44-48). The Court also found many of these transfers were made to avoid tax implications. (Doc. 533, p. 44-48). The debtor does not dispute the Bankruptcy Court's findings, however, he does argue that he did not commingle funds, kept substantial records, and the KCTs did not pay the living expenses of the debtor. The debtor argues this was shown at trial with substantial evidence and exhibits, however, he fails to cite to any of the evidence or exhibits in his brief.

The Bankruptcy Court found that Polo Executive Rentals is a named lessor under the lease agreement for the Oneida property. (Doc.533#, p. 16). The company has no assets, and exists only in name on a bank statement. (Doc. 533, p. 16). The debtor testified at trial that the Polo account is owned or controlled by the KCT I. (Doc. 553, p. 17). The debtor cites to exhibits that reflect payments made from the debtor to Polo Rentals for a time period which he

lived in the Onieda property. The bank statements show payments made to Polo. However, this evidence does not controvert the factual findings made by the Bankruptcy Court. The debtor tries to argue that this evidence shows there was no commingling of funds. However, the debtor had control over KCT I, which controlled the Polo Executive Rentals, to whom the debtor make payments of rent for a limited time. The debtor's argument does not convince the court that the Bankruptcy Court was incorrect in its findings.

A review of the record shows the evidence supports the Bankruptcy Court's findings. The bankruptcy court was in a position to weigh the credibility of the witnesses, and the evidence in the record supports the conclusions made by the court. The determination of credibility is best left to the bankruptcy judge. Fed.R.Bankr.P. 8013. The Bankruptcy Court did not impose a "beyond a reasonable doubt" burden on the debtor. The Bankruptcy Court set forth a sufficient factual basis upon which it relied to make legal conclusions. The Bankruptcy Court did not err in the factual or legal findings. The debtor's request for judgment notwithstanding the verdict is denied.

B. Dischargability of Debtor's Tax Debt

The debtor argues the Bankruptcy Court erred as a matter of law when the Court denied dischargability on the debtor's tax debt. The debtor argues that there was never a determination that he filed fraudulent tax returns in 1994 and 1995. The debtor also argues that he did not willfully evaded the payment of taxes, but that he was unable to pay his tax debt. The United States argues that the Bankruptcy Court correctly determined the debtor's tax liabilities are nondischargeable pursuant to 11 U.S.C. § 523(a)(1)(C), and that his 1994 and 1995 tax liabilities were nondischargeable for filing a fraudulent return.

11 U.S.C. § 532 provides that a discharge under the bankruptcy code does not discharge an individual from any debt for a tax "with respect to which the debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax." 11 U.S.C. § 523(a)(1)(C). The elements of "fraudulent return" or "willfully attempted in any manner to evade or defeat such tax" are to be read in the disjunctive. In re Schlesinger, 290 B.R. 529, 537 n. 5 (Bkrtcy.E.D.Pa. 2002). The elements of a fraudulent return are: 1) knowledge of the falsehood of the return; 2) an intent to evade taxes, and 3) an underpayment of the taxes. Id. at 536.

The debtor relies on the fact that the IRS did not make a determination that he filed fraudulent returns. A review of the relevant law and cases shows no support for this theory. The Bankruptcy Court is not precluded from reviewing the facts and the law, and making a finding that the tax returns were fraudulent.

When a debtor signs a tax return which he knows is false, and it results in an underpayment of taxes, fraud is committed. In re Hopkins, 133 B.R. 102, 107 (Bkrtcy.N.D.Ohio, 1991). The facts at trial showed that prior to filing the tax returns for 1994 and 1995, the debtor was aware that deductions for his partnership investments were not allowed based on the ruling in Hildebrand v. C.I.R., 28 F.3d 1024 (10th Cir. 1994) (finding that no actual and honest profit objective was present in either limited partnership, and disallowing Krause's deductions for losses in the limited partnerships). However, the debtor continued to claim the deductions in his tax filings. Furthermore, the debtor has not shown evidence in the record to support his argument that returns were not fraudulent.

The Tenth Circuit has examined a number of cases reviewing the willful evasion elements of 11 U.S.C. § 523(a)(1)(C). "Wilful attempt may be inferred from conduct such as

keeping a double set of books, making false entries or alterations, or false invoices or documents, destruction of books or records, concealment of assets or covering up sources of income, handling of one's affairs to avoid making the records usual in transactions of the kind, and any conduct, the likely effect of which would be to mislead or to conceal." Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943), (interpreting the language of 26 U.S.C. § 145(b), currently codified at 26 U.S.C. § 7201). A debtor's acts are "willful" if they are done voluntarily, consciously or knowingly, and intentionally. In re Toti, 24 F.3d 806, 809 (6th Cir. 1994).

The Bankruptcy Court found the debtor knowingly concealed assets to avoid payment or collection of taxes. The Bankruptcy Court found the debtor transferred property from debtor to his wife, such as the family home and notes owed to him without any consideration, the debtor transferred companies to the trusts while he continued to run the businesses, the debtor used the trusts to pay personal expenses, the debtor did not have a bank account after 2000, the debtor had no taxable income from 1999 to 2004, the debtor did not own a house or vehicle, and all the debtor's assets were owned by the trusts. The Court found that the debtor engaged in a pattern of conduct to willfully evade the payment of or the collection of his income tax liability. The Bankruptcy Court excepted his entire income tax liability from discharge.

A review of the record and the evidence presented at trial show deliberate and knowing actions by the debtor. The debtor transferred all of his property to the trusts and his wife, and the debtor retained no accounts in his name. The debtor argued this was done for his children's trusts, and love and affection from his wife, and pursuant to the prenuptial agreement. However, the trusts were not created as provided for in the prenuptial agreement. The children's trusts

acted as a holding agency, removing the debtor's name from the owner, but allowing him to maintain control over the business. Finally, the debtor does not offer an explanation as to why he was not compensated for the transfers. This court is aware that the debtor is an attorney, with a number of years of business experience. The debtor does not provide a legitimate business reason for setting up his finances in this manner. It is also pertinent to note that the debtor set up his business and financial holdings in this matter shortly after the Tenth Circuit affirmed the decision of the tax court in Hildebrand v. C.I.R., 28 F.3d 1024 (10th Cir. 1994). The evidence shows the debtor has voluntarily, knowingly, and intentionally attempted to conceal assets from the IRS to avoid payment of his income tax liability.

Finally, the debtor argues that he did not willfully attempt to evade paying his tax obligation. The debtor argues inability to pay is not willful evasion. The evidence does not support this argument. After his fight began with the IRS, the debtor began to transfer notes and property to his wife, beginning in 1989. The debtor also transferred stock, property, and security interest in business ventures. The debtor directed that his inheritance go directly to his own trust, and he attempted to waive his interest in another inheritance. In 1991, debtor's wife opened an account with Merrill Lynch with a deposit check of $150,000 drawn on Energy Associates, a company owned by the debtor. In 1992, debtor's wife opened a Paine Webber account, which the debtor managed. Between 1991 and 1999, the debtor made deposits worth more than $600,000 to the Paine Webber account. The debtor created the five children's trusts, and transferred over $450,000 to the trusts between 1993 and 1998. Between 1991 and 1994, he transferred six life insurance policies to the trusts as well. The debtor continued to exercise control over these trusts. The debtor has not shown inability to pay. Instead, the debtor has

shown that during the 1990s, the debtor purposefully transferred money and property either to his wife or into trusts to avoid tax implications. The Bankruptcy Court did not err in denying dischargeability on debtor's tax debt.

     C. <u>Discovery Sanction Requiring Forfeiture of Passport</u>

     The debtor argues the Bankruptcy Court erred as a matter of law in the discovery sanction order, in which the debtor was required to forfeit his passport. The debtor argues passport forfeiture is a criminal sanction, and the Court abused its discretion. The United States argues that the Bankruptcy Court did not abuse its discretion under 11 U.S.C. § 105(a).

     The Bankruptcy Court, in the sanction order dated June 4, 2007, noted the debtor's frequent trips to Switzerland, and determined that it would be in the best interest of the creditors and the estate if the debtor was unable to leave the jurisdiction. The Court ordered the debtor forfeit his passport to the Clerk.

     "The Bankruptcy Court has the power to 'issue any order...necessary or appropriate to carry out the provisions of this title...including taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process...'" <u>In re Van Vleet</u>, 2009 WL 3162212, p. 15 (D.Colo. 2009); 11 U.S.C. § 105(a). The bankruptcy court may use section 105 to sanction conduct abusive of the judicial process. <u>In re Courtesy Inns, Ltd.</u>, 40 F.3d 1084, 1089 (10th Cir. 1994). The bankruptcy court can also use section 105 to guarantee nothing will interfere with the debtor's case. <u>In re Western Real Estate Fund, Inc.</u>, 922 F.2d 592, 601 (10th Cir. 1990). Sanctions issued by the bankruptcy court can be either coercive or remedial. <u>In re Shafer</u>, 63 B.R. 194, 198 (Bankr.D.Kan. 1986). Coercive civil contempt sanctions, such as the order of forfeiture of the passport, serve to enforce future

compliance with court orders.  Id.

Criminal contempt orders punish for violating a court order.  In re Skinner, 917 F.2d 444, 447, n. 2 (10th Cir. 1990), citing Griffith v. Oles (In re Hipp, Inc.), 895 F.2d 1503, 1509 (5th Cir. 1990).  Criminal contempt sanctions are imposed for a completed act of disobedience, to "vindicate the authority of the court."  In re Armstrong, 304 B.R. 432, 437-38 (10th Cir.BAP 2004).  Civil contempt orders can either compel or coerce obedience of a court order or compensate parties for losses resulting from non-compliance with a court order.  Id. citing Gibbons v. Haddad (In re Haddad), 68 B.R. 944, 952 (Bankr.D.Mass. 1987).

The Bankruptcy Court noted that the debtor continued to take trips to Switzerland while he was petitioning the court to allow living expenses from the estate.  The Bankruptcy Court ordered the debtor to forfeit his passport.  It is important to note this sanction was issued in the same order in which the court found the debtor willfully and intentionally destroyed electronically stored evidence.  (Doc. 311, p. 42).  The Bankruptcy Court ruled that partial default judgment was appropriate.  The Court also determined the debtor was in contempt of the October 17, 2006 computer turnover order, the preliminary injunction, and the April 14, 2006 Asset Disclosure Order.  The Court noted the debtor was not acting as a good faith debtor wanting to have a fresh start.  Based on the debtor's failure to follow the court's previous order, the internet activity which showed the debtor was involved with additional entities, use of off-shore contacts, and financial activities and trafficking in frozen assets, the Bankruptcy Court's concern that the debtor would flee the jurisdiction was a legitimate concern.  The sanctions imposed by the Bankruptcy Court were not criminal sanctions.  The Court was attempting to compel the debtor to comply with the prior orders of the court, as well as the orders contained in

16

the Order of June 4, 2007. Considering the history of noncompliance by the debtor, and destruction of evidence, the Bankruptcy Court did not abuse its discretion in ordering forfeiture of the debtor's passport.

D. Discovery Sanctions Awarding Partial Summary Judgment on Claims Regarding PHR LLC and Drake Enterprises

The debtor argues that the Bankruptcy Court's sanction order of partial default judgment, determining the GEKT, KIT, FIMCO, FGC, Drake Enterprises, Inc, and PRH LLC are the nominees or the alter ego of the debtor operated to injure the intervenors and deprive them of due process. The debtor argues the trusts, the companies, and the intervenors did not engage in misconduct, and yet the discovery sanction deprived them of property in which they had an interest.

The intervenors also argue the discovery sanction operated to injure them and deprive them of due process of law. The intervenors argue that they engaged in no willful misconduct, yet the discovery sanction order operated to deprive them of property in which they had an interest.

The United States argues the parties have not been denied their substantive due process rights, as the actions of the Bankruptcy Court are authorized by law. The United States argues the parties were not denied their procedural due process rights as they were allowed a meaningful opportunity to be heard. Finally, the United States argues since the misconduct was on the part of the debtor, and the property was determined to be nominee of the debtor, the court acted appropriately to preserve the bankruptcy estate.

The Bankruptcy Court has the inherent powers to impose sanctions for conduct abusive

of judicial process, pursuant to 11 U.S.C. § 105(a).  In re Curtesy Inns, Ltd., Inc., 40 F.3d 1084, 1089 (10th Cir. 1994).  The bankruptcy court has broad discretion to impose sanctions as they see fit.  Chambers v. NASCO, Inc., 501 U.S. 32, 44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991).

The Tenth Circuit stated that the court may not exercise its powers "without notice to the offending party of the grounds of complaint against him, and affording him ample opportunity of explanation and defense."  Braley v. Campbell, 832 F.2d 1504, 1514 (10th Cir. 1987).  This principle applies to sanctions awards as well.  Id.  The opportunity to respond, such as file a brief, satisfies the due process requirement.  In re M & L Business Mach. Co. Inc., 169 B.R. 711, 714 (D.Colo. 1994), citing Dodd Ins. Services, Inc. V. Royal Ins. Co. Of America, 935 F.2d 1152, 1160 (10th Cir. 1991).

A review of the record shows the United States filed a Motion for Sanctions on Spoliation of Electronic Evidence on February 7, 2007.  (Doc. 219).  On February 27, 2007 the United States filed a Motion for Default Judgment and to Have Debtor Held in Contempt.  (Doc. 235).  The intervenor filed a response to the motions on March 5, 2007.  (Doc. 251 and 252).  The court began to hear evidence on the motions on March 22 and March 23, 2007.  (Doc. 267).  The hearing was continued and concluded on April 12, 2007.  (Doc. 287).   The Bankruptcy Court provided the debtor and the intervenors an opportunity to respond and the parties were provided due process.  The Bankruptcy Court did not abuse its discretion in imposing sanctions on the debtor.

Finally, both the debtor and the intervenors argue that the sanctions injure the intervenors' rights in the trust property.  However, they fail to recognize the intervenor's interest in the trust property is dependent upon the debtor's interest in the property, and the validity of

the trusts.  As discussed in a later part of this opinion, the trusts were not valid, and the trusts were actually nominees of the debtor.  Neither party cites to any evidence or offers any legal support to the idea that the beneficiary's interest is validly created or survives a trust that only exists in name.

      E.  <u>Interpretation of 26 U.S.C. § 6502(a)</u>

The debtor argues the Bankruptcy Court misapplied the statute of limitations for the government's fraudulent conveyance based claims.  The debtor argues that the 10 year statute of limitation bars the IRS from pursuing fraudulent transfer actions where the transfer occurred more than 10 years before an action is brought for fraudulent transfer.  The debtor claims the IRS did not make the first assessment of taxes until December 1, 1999, and did not bring the action for fraudulent transfer until November 1, 2005, thus the IRS is barred by the ten year statute of limitation for any transfer prior to November 1, 1995.

The United States argues the trigger for the 10 year statute of limitations date is the date of the tax assessment.  The United States argues that fraudulent activity of any kind is not important to the statute of limitations.  Furthermore, the United States and the Trustee filed their adversary complaints within 10 years of the date of the assessed taxes.

"Where the assessment of any tax imposed by this title has been made within the period of limitations properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun within 10 years after the assessment of the tax."  26 U.S.C. § 6502(a)(1).  The filing of a tax return starts the three year period in which the IRS can assess taxes.  26 U.S.C. § 6501(a).  Once the assessment is made, the running of the ten year statute of limitations to collect on the assessed tax begins to run.

Remington v. U.S., 210 F.3d 281, 284 (5th Cir. 2000). "The 'assessment', essentially a bookkeeping notation, is made when the Secretary or his delegate establishes an account against the taxpayer on the tax rolls." Laing v. U.S., 423 U.S. 161, 171 n. 13, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976); 26 U.S.C. § 6203.

The debtor relies on U.S. v. Hoyt, 524 F.Supp.2d 638 (D.Md. 2007), to support his position that the statute of limitations bars collection by the IRS on the assessed tax. In Hoyt, the court found Maryland law imposed a three year statute of limitations for bringing a fraudulent conveyance action, however, the court determined the United States is not bound by state statutes of limitation in enforcing its rights. Id. at 641, citing United States v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). The court found "the statute of limitations relevant to the government's fraudulent transfer action against a taxpayer is the ten-year limitation imposed by 26 U.S.C. § 6502(a)." Id. The debtor's reliance on Hoyt is misplaced as Hoyt supports the United States' position that the Government is bound by the federal ten year statute of limitation.

The evidence in this case shows the IRS's assessment was made in December 1999. Therefore, pursuant to § 6502, the IRS has 10 years, or until December 2009, to collect on the assessed tax. The United States filed its adversary proceeding in November of 2005, within the ten year statute of limitations. The Bankruptcy Court did not err in its interpretation of 26 U.S.C. § 6502(a).

F.  Debtor's Motion to Strike Certain Claims brought by the United States

The debtor argues the IRS lacks standing to assert a fraudulent transfer claim in the bankruptcy court. The debtor argues 11 U.S.C. § 548 does not provide the bankruptcy court

authority to confer standing on a creditor to avoid a transfer as fraudulent. The United States argues they are an active, party plaintiff in the adversary action, and the United States did not raise fraudulent transfer or nominee counts in the complaint in accordance with 11 U.S.C. § 548. The United States cites to the complaint to show a request for a determination as to the validity and extent of its liens.

Section 548 of the Bankruptcy Code permits a trustee to avoid certain fraudulent transfers of the debtor. "The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A).

The debtor is correct that a creditor is not allowed to assert a fraudulent transfer claim in the bankruptcy court. In re Munoz, 111 B.R. 928, 930 (D.Colo., 1990). The power to assert a fraudulent conveyance action is limited to the trustee. Id. The United States filed the adversary proceeding pursuant to Rule 7001 to determine if the debtor's tax debt was dischargeable and to determine the extent of the federal tax liens (Doc. 1). The Trustee alleged that the trusts were alter egos of the debtor, the transfer of property were fraudulent, and requested the property be turned over to the Trustee. (Doc. 25). The Trustee was the appropriate party to bring the fraudulent conveyance claims. As such, the Bankruptcy Court did not err in denying the debtor's motion to dismiss for lack of standing.

G.  <u>Krause Children's Trusts Nominees of Debtor</u>

The intervenors argue that the Bankruptcy Court erred in ruling the Children's Trusts are the nominees and /or the alter egos of the debtor.  The intervenors argue that the application of nominee theory is analogous to outside reverse entity veil piercing.  The debtor argues the Bankruptcy Court erred in ruling that all the trusts and corporation are nominees of the debtors. The debtor makes the same arguments on this issue as the intervenor.

The United States argues the Bankruptcy court did not use alter ego principles in deciding the claim, but rather the Court relied on federal nominee theory.  The United States argues that since trusts can hold title to property, and the trusts at issue hold fraudulent transferred property, the trusts' property is subject to the liens.

In Kansas, the doctrine of alter ego is used to impose liability on the individual who uses a corporation as an instrumentality to conduct his own personal business.  <u>Sampson v. Hunt</u>, 233 Kan. 572, 579, 665 P.2d 743 (1983).  Liability is based on fraud or injustice perpetrated on third persons dealing with the corporation.  <u>Id</u>.  When a court imposes this type of liability, the individual will be held responsible for the acts done in the name of the corporation.  <u>Id</u>, citing <u>Kilpatrick Bros., Inc. v. Poynter</u>, 205 Kan. 787, 797, 473 P.2d 33 (1970).

In this case, the United States argues, and the Bankruptcy Court found, that the debtor used the trusts to conduct his business and personal affairs.  The trusts held not only accounts, but also the debtor's personal residence, corporations and life insurance policies.  However, the United States argues that the Bankruptcy Court did not apply alter ego theory analysis, which would be based in state law, but nominee theory.  The difference between alter ego and nominee theory is best explained in <u>U.S. v. Engels</u>, 2001 WL 1346652  (N.D.Iowa, 2001).

> "This court's review of the case law and secondary authorities elicits no
> significant practical differences between the terms 'nominee' and 'alter ego.'
> Focusing on the relationship between the taxpayer and the property, the nominee
> theory 'attempts to discern whether a taxpayer has engaged in a sort of legal
> fiction, for tax purposes, by placing legal title to property in the hands of another
> while, in actuality, retaining all or some of the benefits of being the true owners.'
> Richards v. United States, 231 B.R. 571, 578 (E.D.Pa. 1999). An alter ego theory
> focuses more on those facts associated with a 'piercing the corporate veil'
> analysis. William D. Elliot, 'Nominee Liens and Alter Ego,' Fed. Tax Collect.
> Liens & Levies ¶ 9.10[2] (2001). And while the latter is certainly more familiar
> as a means of challenging a corporations's validity to shield personal liability, its
> multi-factor test has been adopted and/or adapted by some courts to the trust
> arena as well." Id. at 6.

Nominee status is determined by the degree to which a party exercises control over an entity and

its assets. Shades Ridge Holding Co., Inc. v. U.S., 888 F.2d 725, 728-29 (11th Cir. 1989).

Nominee focuses on equitable principles, the relationship between the taxpayer and the property.

Baum Hydraulics Corp. v. U.S., 280 F.Supp.2d 910, 916 (D.Neb. 2003).

     Application of the nominee theory involves state and federal law. The court must look to

state law to determine what rights the taxpayer has in the property. Aquilino v. United States,

363 U.S. 509, 513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). The court should then look to federal

law to determine the tax consequence and priority of the lien against a taxpayer's property. Id.

In determining the debtor's rights in the property, the facts show that the debtor set up the five

KCTs as inter vivos, irrevocable spendthrift trusts. The debtor renounced any interest in the trust

property and prohibited use of the  trust property to meet legal obligations. Kansas law limits the

availability of trust property to creditors:  "With respect to an irrevocable trust, a creditor or

assignee of the settlor may reach the maximum amount that can be distributed to or for the

settlor's benefit." K.S.A. § 58a-505(a)(2). However, this same statute also prevents fraudulent

conveyance of property to self-settled trusts to avoid creditors.   See K.S.A. § 58a-505(a)(1).

During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors. <u>Redmond v. Kester</u>, 284 Kan. 209, 218, 159 P.3d 1004 (2007).

The law in Kansas is clear. "The general rule is well settled both at common law and under statute that a person cannot settle his estate in trust for his own benefit, so as to be free from liability for his debts. The intention of the parties to such transfer, whether honest or fraudulent, is wholly immaterial. The rule is founded on the self evident proposition that a man's property should be subject to the payment of his debts, although he has vested a nominal title thereto in some other persons." <u>Herd v. Chambers</u>, 158 Kan. 614, 589, 149 P.2d 583 (1994), citing 37 C.J.S., Fraudulent Conveyances, p. 1048, § 219. Therefore, the property held by the nominee in fact belongs to the debtor, and is not exempted from the creditors. <u>Id</u> at 591.

For a trust to be valid, the settlor must manifest an intention to impose upon the trustee duties which are enforceable in the courts. Restatement Trusts § 25. In <u>Lewis G. Allen Family Trust v. Government of U.S.</u>, the court found the trust was invalid because no enforceable obligation was imposed on the trustee. 558 F.Supp. 152, 157 (D.Kan. 1982). In <u>Lewis</u>, the settlor used the trust property to pay his personal debts and lived rent free at the residence held in the trust property. <u>Id.</u> The court found there was no attempt to impose any enforceable obligations upon the trustees, and therefore there was not a valid trust created. <u>Id.</u> at 158. The court also recognized that the obvious purpose of the trust was to avoid the tax laws of the United States. <u>Id.</u> The court found that "For all practical purposes, Lewis G. Allen remained the owner of the real property at 8900 Pflumm Road, Lenexa, Kansas. Consequently, the Court has jurisdiction in this suit to foreclose the tax lien on the proceeds of the sale of that property and award them to the United States." <u>Id.</u> Furthermore, the property that was purportedly

transferred to the trust remained the property of the debtors, subject to the tax lien.  Id.

The facts show that the debtor created the trusts for his own benefit, just like the plaintiff in the Herd case.  The debtor set up his estate to prevent creditors from reaching the property.  However, pursuant to Kansas State law, the trusts are not valid, as the debtor did not impose upon the trustee duties any duties. Just like in the Lewis case, the obvious purpose of the trust is to avoid tax laws, and the debtor retained absolute control over the property contained within the trusts.  Debtor was able to transfer funds to and from the trusts, debtor controlled the residences held in trust, and debtor's living expenses were paid from the trusts.   The Bankruptcy Court correctly ruled that the purpose of the trust was to avoid the tax liens of the United States.  Therefore, pursuant to state law, the property that was transferred to the trusts remains the property of the debtor.

The evidence clearly shows that the trusts set up by the debtor were in fact nominees of the taxpayer.  Courts have considered the following information in determining the nominee status: 1.) No or inadequate consideration paid by the nominee;  2).  Exercise of dominion or control by taxpayer; 3.) Close relationship between the taxpayer and the nominee; 4.)  Property placed in the name of a nominee in anticipation of suit or occurrence of liabilities but the transferor continues to exercise dominion and control over the property; 5.)  Retention of possession by the taxpayer;  6.) Taxpayer continues to enjoy the benefits of the property;  7.) Other expenses of the property paid by the taxpayer.  Baum Hydraulics, 280 F.Supp.2d at 917, n. 14.

A review of the record shows the debtor created five trusts, all named the Krause Children Trusts, between 1988 and 1990.  The trusts were spendthrift trusts.  The debtor's brother was named the trustee of all the trusts.  By 1993, the debtor had deposited $150,000 into KCT1.  In February 1989, the debtor's father created the GEKT and the KIT trust.  The debtor is the sole beneficiary of

both trusts.  The debtor's brother is the trustee for both trusts.  Between 1993 and 1998 the debtor transferred over $450,000 to the KCTs.  The debtor also transferred 6 life insurance policies to the KCTs.  The transfers were made after the debtor was aware of his tax obligation to the IRS.  The debtor transferred ownership interest in some of his business entities to the GEKT trust, after he was aware of his tax obligation to the IRS.  Both the debtor and the debtor's business partner transferred property into the KIT, also after the debtor was aware of his tax obligations to the IRS.  The record also shows the debtor transferred proceeds from the sale of a family home into the KCTs, the KCT held the deed and the mortgage for the second family residence, and except for a limited amount of time, the debtor did not pay rent or the mortgage on this residence.  The debtor attempted to use the funds contained in the KCT to purchase another home.  The debtor borrowed money from the KCT to purchase a new car, and used funds from KCT to finance a limited liability company.  The debtor transferred $170,000 to his wife in a divorce settlement out of the GEKT.  Since 2002, companies held by the KIT and GEKT have paid the debtor's family personal and home expenses. Out of the seven factors set forth in <u>Baum</u>, the debtor satisfies all seven of them.  The debtor did not receive payment for the property received by the trusts, the debtor continued to exercise control over the trusts, there was a close relationship between the debtor and the trusts, the debtor transferred property to the trust after discovering the IRS was looking into possible tax fraud, the debtor, for all intents and purposes, retained possession of the property, the debtor continued to enjoy the property held by the trusts, and the trust paid the debtor's expenses.

The debtor retained all the rights of an owner in the property discussed above.  The evidence is clear that the debtor controlled the property and the trusts.  The court is particularly mindful that during the divorce proceeding, the debtor prepared a divorce settlement agreement, in which he

offered to pay his wife $170,000 if she would dismiss the KCTs from the divorce case. Debtor's wife complied. Debtor was able to transfer funds to and from the trusts, debtor controlled the residences held in trust, and debtor's living expenses were paid from the trusts. In <u>U.S. v. Miller Bros. Const. Co.</u>, 505 F.2d 1031 (10th Cir. 1974), the court found that the taxpayer exerted dominion and control over the land for almost 20 years, which was indicative of his ownership. <u>Id.</u> at 1036. Furthermore, in the instant case, the trustee exercised no control or management over the trusts, and did not exercise any of the duties placed upon the trustee.

Nominee status is determined by the degree to which a party exercises control over an entity and its assets. <u>Shades Ridge</u>, 888 F.2d at 728-29. In this case, the debtor exercised absolute control over the trust property. The Government can collect tax debts from the assets of a taxpayer's nominee, instrumentality, or alter ego. <u>U.S. V. Scherping</u>, 187 F.3d 796, 801 (8th Cir. 1999). Also, the IRS may properly levy against property of a delinquent taxpayer's nominee. <u>In re Richards</u>, 231 B.R. 571, 578 (E.D.Pa., 1999). The Bankruptcy Court did not err in determining the trusts were the nominee of the debtor. Furthermore, the Bankruptcy Court did not err in determining the trust property is subject to the liens of the United States.

H. <u>Kansas Statute of Repose</u>

Both the debtor and the intervenor argue that the Bankruptcy Court erred in ruling that the Kansas Statute of Repose did not bar the claims of fraud. They argue that claims of fraudulent conveyance and fraudulent transfer are subject to the period of limitation and repose set out in Kansas statutes. Therefore, they contend, some claims are time barred, and other claims are extinguished. The United States argues that the Bankruptcy Court did not decide the plaintiffs' fraudulent transfer claims, as the Court ruled the trusts were the nominees of the debtor. The

Government argues that even if the Bankruptcy Court had addressed the claim, the Court would have determined that the United States is not bound by state statutes of limitations.

The Bankruptcy Court found that the fraudulent transfer claims were moot with respect to property held by the KCTs. (Doc. 533, p. 95). The fraudulent transfer claims with respect to property not held by the KCTs were viable. The Bankruptcy Court found the debtor fraudulently transferred his interest in Quivira under common law.

The intervenors and the debtor rely on civil limitation statutes in Kansas. "The following actions shall be brought within two years: An action for relief on the ground of fraud, but the cause of action shall not be deemed to have accrued until the fraud is discovered." K.S.A. § 60-513(a)(3). However, the United States is not bound by state statutes of limitations in enforcing its rights. U.S. v. Summerlin, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). The immunity of the sovereign from these defenses is historic, and unless expressly waived, it is implied in all federal enactments. Board of Com'rs of Jackson County v. U.S., 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313 (1939). In U.S. v. Christensen, 751 F.Supp. 1532 (D.Utah, 1990), the district court, reviewing the Utah statute of limitations regarding fraudulent conveyance, stated that "case law is overwhelming in support of the proposition that the United States is not bound by a state statue of limitations unless Congress so provides." Id. at 1535. The Kansas Supreme Court reviewed the statute at issue, and determined that the statute of limitations set out in K.S.A. 60-513 did not apply to the state because it was not specifically provided for by statute. State Highway Commission of Kansas v. Steele, 215 Kan. 837, 839, 528 P.2d 1242 (1974). With the exception of the transfer of the Quivera property, since the Bankruptcy Court found the trusts were the nominees of the debtor, the Court did not address the transfer of the property under the Kansas statutes. This court finds the

Bankruptcy Court did not abuse its discretion, and agrees that the trusts of the debtor are nominees of the debtor.

The Bankruptcy Court found the Quivera property was fraudulently transferred. A review of the record shows the debtor transferred his interest in Quivera to his wife, which was then transferred to the GEKT in 1998, according to tax records.

The Uniform Fraudulent Transfer Act was enacted in Kansas in 1998, effective January 1, 1999. L.1998, ch. 13, §§ 1-12. The purpose of the UFTA is to protect unsecured creditors against fraudulent transfers of the debtor. Committee Reports to the 1997 Kansas Legislature, pp. 2-7 (1996). The Bankruptcy Court found that since the transfer of the Quivera property occurred before the enactment of the UFTA, common law applied to any transfer of the Quivera property.

In Credit Union of Amer. v. Myers, 234 Kan. 773, 676 P.2d 99 (1984), the Kansas Supreme Court set forth the elements of fraudulent conveyance. Id at 778. A fraudulent transfer occurs when the debtor intends to hinder, delay, or defraud his creditors. Id. The court set forth six badges or indicia of fraud: 1.) A relationship between the grantor and grantee; 2.) The grantee's knowledge of litigation against the grantor; 3.) Insolvency of the grantor; 4.) A belief on the grantee's part that the contract was the grantor's last asset subject to a Kansas execution; 5.) Inadequacy of consideration; and 6.) Consummation of the transaction contrary to normal business procedures. Id. The badges are not exclusive. Id.

The Bankruptcy Court found there was a close relationship between the grantor and the grantee, as they were husband and wife, and the debtor was the beneficiary and his brother was the trustee. The debtor was involved in tax litigation and disputes with the IRS at the time of the transfers. There was no consideration for the transfer of the property, and the transfers were not

conducted in normal business proceedings. The court has reviewed the record, and the Bankruptcy Court's finding are supported by the evidence. There was never any explanation presented as to why Quivera was moved from the debtor, to the debtor's wife, to a trust. The effect of the transfer moved Quivera into one of the trusts, and out of the reach of the debtor's creditors. The Bankruptcy Court correctly concluded the property was fraudulently transferred.

VI. <u>Conclusion</u>

IT IS THEREFORE ORDERED, based on the reasons set forth above, the decision of the Bankruptcy Court be AFFIRMED.

IT IS SO ORDERED this 16th day of December, 2009.


  s/ Wesley E. Brown
Wesley E. Brown
United States Senior District Judge